IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| WILLIAM JOHNSON | : | NO. 19-0606 |

MEMORANDUM

Bartle, J.                                      December 21, 2020

        Defendant William Johnson was convicted after a jury
trial of one count of being a felon in possession of a firearm
in violation of 18 U.S.C. § 922(g)(1).  Before the Court is the
motion of defendant for a new trial under Rule 33 of the Federal
Rules of Criminal Procedure.

I

        Pursuant to Rule 33, the court may grant a new trial
"if the interest of justice so requires."  Fed. R. Crim. P.
33(a).  A new trial may be granted if in the view of the Court
the verdict is against the weight of the evidence. See United
States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002). Unlike an
insufficiency of the evidence claim, the Court is not required
to view the evidence in a light favorable to the Government when
reviewing a motion under Rule 33.  United States v. Silveus, 542
F.3d 993, 1004-05 (3d Cir. 2008).  Instead, the Court "exercises
its own judgment in assessing the Government's case."  Id. at
1004.  The court must consider whether there is "a serious

danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." See id. at 1004-05 (quoting Johnson, 302 F.3d at 150).  Motions under Rule 33 "are not favored and should be granted sparingly and only in exceptional cases." Id. at 1005 (internal quotations omitted).

II

Defendant was first tried in January 2020 but the jury was unable to come to a verdict.  The Court declared a mistrial and scheduled a second trial for March 17, 2020.  The second trial was continued due to the coronavirus pandemic until September 16, 2020.

In the interim, Johnson sent a letter to notify the Court he no longer wished to be represented by the court appointed attorney who represented him at his first trial. Johnson informed the Court that he wanted to proceed pro se at his second trial.  The Court held a hearing on August 12, 2020 and allowed him to do so but appointed him stand-by counsel for his second trial.

The Government presented evidence at Johnson's second trial that on September 2, 2019 at approximately 6:30 p.m. a police radio dispatch reported a man with a gun at an apartment building located at 1508 West Allegheny Avenue in Philadelphia, Pennsylvania.  Philadelphia Police Officers John O'Hanlon, Scott

Holmes,[1] Matthew Lally, and James McCullough responded to the dispatch.

From their police cruiser, Officers O'Hanlon and Holmes spotted the man described in the dispatch on the southwest corner of 15th Street and West Alleghany Avenue as they were driving east on West Alleghany Avenue.  Officers Lally and McCullough were in a police SUV following immediately behind them.  Both police vehicles stopped.  Officers Holmes and McCullough exited the passenger sides of their respective police vehicles and approached the man.  Defendant Johnson, who was with the man, fled to the east on West Alleghany Avenue after he saw the officers.  Officers Holmes and McCullough chased after Johnson on foot while Officers O'Hanlon and Lally followed in their police vehicles.  Both Officers O'Hanlon and McCullough saw Johnson grab his waistband at times when he ran.

Johnson's flight along West Alleghany Avenue was confirmed by a video taken by a surveillance camera from a building across the street.  The video also showed Johnson grabbing his waistband at times.  Johnson did not dispute at his second trial that he is the man seen running from police in the video.

---

1.        Officer Holmes did not testify at Johnson's trial.

After running a block to the east on West Alleghany Avenue, Johnson turned right and headed south on Carlisle Street.  All the officers except Officer Lally turned right onto Carlisle Street to follow Johnson who then turned left into a vacant lot.  Officer Lally testified at Johnson's second trial that he was familiar with the area and guessed where Johnson was heading.  He drove another block to the east on West Allegheny Avenue in the police SUV and turned right onto Rosewood Street which parallels Carlisle Street.

Officer Lally drove down Rosewood Street and stopped in front of a wood fence to his right.  The wood fence ran along the front of a vacant lot.  That lot connected to the lot into which Johnson ran from Carlisle Street.  The two lots formed a path between the two streets although a chain-link fence divided the lots.  Just as Officer Lally guessed he would, Johnson attempted to run through the lots to access Rosewood Street by climbing over the chain-link and wood fences.

By the time Johnson climbed to the top of the wood fence on Rosewood Street Officer Lally was waiting on the other side.  Johnson saw Officer Lally from the top of the wood fence, let out a curse, and jumped back into the Rosewood Street lot.  Officer Lally, viewing Johnson through a gap in the fence, saw him remove a gun from his waistband and discard it on the ground.  Officer Lally testified:

-4-

> This all took place in a matter of seconds.
> You [Johnson] jump down off the fence, you
> took that firearm out of your waistband,
> sir, you threw that firearm behind you, and
> then you went to look as if you were going
> to run back towards Carlisle Street, sir.
> And then you realized that Officers O'Hanlon
> and McCullough were already there, waiting
> for you. I'm the only one who had the front
> view of you, sir. I watched you do all this.

Officer Lally detained Johnson and handed him over through the gap in the wood fence to Officer McCullough who had hurried around to Rosewood Street.  Officer O'Hanlon, who by that time also walked around to Rosewood Street, made a record of the gun which was loaded with 17 rounds of live ammunition.

Johnson stipulated that before his arrest, he had been convicted in a court of the Commonwealth of Pennsylvania of a crime punishable by imprisonment for a term exceeding one year and that the crime was a felony within the meaning of 18 U.S.C. § 922(g)(1).  He also stipulated that he had knowledge of the conviction at the time of his arrest.  There was also uncontested evidence that the gun was manufactured in South Carolina.

The jury found Johnson guilty of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  The evidence was more than sufficient to sustain the jury's verdict.

III

Johnson moves for a new trial on the ground that the Court violated his right of confrontation by not permitting him to cross-examine Officer Lally about investigations of the Internal Affairs Division of the Philadelphia Police Department ("IAD") into an improper search he conducted in 2012 and unauthorized overtime he received in 2020.  Johnson argues that Officer Lally, who is the only officer that saw him discard the gun, is a key Government witness.  Specifically, Johnson maintains that questioning Officer Lally about the improper search and unauthorized overtime was relevant to his general character for truthfulness under Rule 608(b) of the Federal Rules of Evidence.

The Government disclosed to Johnson's counsel before the first trial that Officer Lally was found by IAD to have improperly searched a home in North Philadelphia on May 14, 2012.  Officer Lally was interviewed by IAD in connection with the search in August 2013.  He told IAD that he did not search the home.  IAD found in March 2014 after interviewing several other witnesses that Officer Lally had in fact searched the home and that the search was in violation of Philadelphia Police Department Policy.

On September 15, 2020, before Johnson's second trial, the Government disclosed in a letter sent to his stand-by

-6-

counsel that a complaint pending against Officer Lally at the time of the first trial had thereafter been sustained by IAD on May 4, 2020.  IAD found that Officer Lally had violated Philadelphia Police Department Policy by failing to notify a supervisor that he received notices to attend court proceedings where he was not a necessary witness.  Officer Lally received 36.5 hours of unauthorized overtime as a result of attending the court proceedings.[2]  None of the IAD's findings or its investigations into Officer Lally relate to Johnson.

On the morning of jury selection at the second trial, Johnson moved to cross-examine Officer Lally about the "Internal Affairs investigation in which it was proven that he lied under oath."  As noted, Johnson sought to challenge on cross-examination Officer Lally's character for truthfulness under Rule 608(b) of the Federal Rules of Evidence.  The Court denied Johnson's motion from the bench.  It ruled that "whatever [Officer Lally] may or may not have done in some other proceeding is collateral to this case."  The Court determined

_____

2.        The Government submitted to the Court a memorandum prepared by IAD in March 2014.  In the memorandum, IAD summarized the investigation into Officer Lally's improper search in May 2012 and its interview of him in August 2013. Also before the Court is the Government's September 15, 2020 letter to Johnson's stand-by counsel in which it disclosed IAD's determination that Officer Lally received unauthorized overtime. The documentation does not state whether Officer Lally and the various witnesses were under oath.

that the IAD investigations were not relevant to this case, and
even if relevant and admissible, were highly prejudicial and
outweighed any probative value pursuant to Rule 403 of the
Federal Rules of Evidence.

The Sixth Amendment to the United States Constitution
guarantees the criminally accused the right to confront
Government witnesses testifying against them.  Davis v. Alaska,
415 U.S. 308, 315 (1974).  This right of confrontation is not
only a right to confront a Government witness physically but to
cross-examine the witness to test his believability or the truth
of his testimony.  Id. at 316-17.

A criminal defendant is permitted to cross-examine a
Government witness to explore "possible biases, prejudices, or
ulterior motives of the witness as they may relate directly to
issues or personalities in the case at hand."  Davis, 415 U.S.
at 316.  "The partiality of a witness is subject to exploration
at trial, and is always relevant as discrediting the witness and
affecting the weight of his testimony."  Id.  (internal
quotation removed).  "[T]he exposure of a witness' motivation in
testifying is a proper and important function of the
constitutionally protected right of cross-examination."  Id. at
316-17.

It does not follow, however, that a defendant's right
of confrontation prevents a trial judge from imposing limits on

his inquiry into "the potential bias of a prosecution witness."
Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).  As the
Supreme Court stated, trial judges "retain wide latitude . . .
to impose reasonable limits on such cross-examination based on
concerns about, among other things, harassment, prejudice,
confusion of the issues, the witness' safety, or interrogation
that is repetitive or only marginally relevant."  Id.

     Where evidence of specific conduct is offered to
attack a Government witness' character for truthfulness, its
admission is governed by Rule 608(b) of the Federal Rules of
Evidence.  See United States v. Davis, 183 F.3d 231, 256-57 (3d
Cir. 1999).  Rule 608(b) provides:

> **Specific Instances of Conduct.** Except for a
> criminal conviction under Rule 609, extrinsic
> evidence is not admissible to prove specific
> instances of a witness's conduct in order to
> attack or support the witness's character for
> truthfulness. But the court may, on cross-
> examination, allow them to be inquired into
> if they are probative of the character for
> truthfulness or untruthfulness of: (1) the
> witness . . .

     In determining whether to allow cross-examination
concerning the truthfulness of a witness, the Court must
determine whether under Rule 403 of the Federal Rules of
Evidence the probative value of that evidence "is substantially
outweighed by a danger of one or more of the following: unfair
prejudice, confusing the issues, misleading the jury, undue

-9-

delay, wasting time, or needlessly presenting cumulative
evidence."  Fed. R. Evid. 403.  Rule 608(b) ties into Rule 403.
United States v. Bocra, 623 F.2d 281, 288 (3d Cir. 1980).

Johnson cannot introduce the IAD investigations or any
findings therefrom into evidence if they are not probative of
Officer Lally's character for truthfulness.  As our Court of
Appeals noted in Davis, such evidence would not only be hearsay
but inadmissible extrinsic evidence under Rule 608(b).  183 F.3d
at 257 n. 12.  Such evidence "sets the stage for a mini-trial
regarding a tangential issue of dubious probative value that is
laden with potential undue prejudice."  Id.  Consequently, any
cross-examination of Officer Lally related to the IAD
investigations would have to be limited to whether he lied to
IAD about the search over seven years ago or failed to inform
his supervisor of the notices to attend court knowing he would
receive unauthorized overtime as a result.  If Officer Lally
were to deny this conduct, Johnson could not put before the jury
evidence to the contrary.  See id.; Fed. R. Evid. 608(b).

The Court of course does not condone any infractions
by Officer Lally.  However, to the extent that Johnson sought to
ask him whether he lied to IAD or knowingly attended a court
proceeding as an unnecessary witness to obtain unauthorized
overtime, the Court determined that the dangers of unfair
prejudice to the Government, confusion of the issues, and

-10-

misleading the jury substantially outweighed any probative
value.

A finding that Officer Lally made a false statement to
IAD, a non-judicial body, some seven years ago that he did not
search a home offers little insight into his character for
truthfulness in this wholly unrelated court proceeding in 2020.
Officer Lally was also found to have received certain overtime
to which he was not entitled.  It is not clear whether this
infraction was an intentional violation of police directives and
whether the infraction involved a lack of truthfulness.
Cross-examination of Officer Lally into the specifics would be a
detour into tangential issues of questionable probative value
and again would be unfairly prejudicial to the Government and
confuse the issues before the jury.

Finally, even if the improper search and unauthorized
overtime were probative of Officer Lally's character for
truthfulness, Johnson's conviction was not founded only on his
testimony.  Officers O'Hanlon and McCullough testified before
the jury that they observed Johnson grabbing his waistband as he
fled.  A video admitted at trial and played to the jury shows
Johnson running east on West Alleghany Avenue at times holding
his waistband.  Officer O'Hanlon saw a gun on the ground in the
lot in which Johnson was standing with his hands up.  Officer
O'Hanlon also observed Officer Lally recover the gun from the

-11-

ground before giving it to him to be recorded as evidence.  No
miscarriage of justice occurred by excluding evidence that
Officer Lally made false statements to IAD in August 2013 or
received unauthorized overtime for attending court proceedings
in which he was not a necessary witness.  See Silveus, 542 F.3d
at 1004-05.  Again, the jury found Johnson guilty beyond a
reasonable doubt.

      Accordingly, the Court will deny the motion of William
Johnson for a new trial under Rule 33 of the Federal Rules of
Criminal Procedure.